THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALIPIO RIVERA RAMOS, Defendant and Appellant.

No. 5774.  Argued May 21, 1935.—Decided May 29, 1935.

*F. González, Jr.,* for appellant.  *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of **the** court.

Alipio Rivera was accused of disturbing the peace on Georgetti Street, Humacao, at about one o'clock in the morning of December 1, 1934.  The complaint alleges that the defendant, wilfully and maliciously, and in apparent state of intoxication, disturbed the peace and quiet of the immediate neighborhood, and especially that of the complainants, with a loud tumult which he caused, uttering obscene words aloud and in an improper and obstreperous manner, within the hearing of women and children, causing, by his disorderly and offensive conduct, a breach of the peace and quiet of the immediate neighborhood and especially that of the complainants.  We have omitted the obscene phrases which are

attributed to the defendant in the complaint, because we shall refer later to those which were a matter of evidence and which are the only ones that we may consider.

The lower court found the defendant guilty and sentenced him to pay a fine of $10 and, in default of such payment, to be confined in jail one day for each dollar left unpaid.

The only error assigned is that the judgment is contrary to the evidence and that it is not supported by any of the allegations of the complaint. The defendant argues that the public element, indispensable for the commission of the offense of disturbing the peace, was not proved, because none of the words attributed to the defendant were uttered in an improper and obstreperous manner or within the hearing of women and children.

■ The complaint was made by policeman Guillermo Fernández on the day the facts complained of occurred. The said witness testified that while he was with his companion in the Plaza Muñoz Rivera of Humacao, at about one o'clock in the morning, they heard singing on Georgetti Street. They approached the spot where the singing was taking place and found the defendant and other young men whom they asked if they had permission to sing. Alipio, somewhat intoxicated, said angrily to officer Fernández, that the police were abusive and then used strong language, saying: "*Coño,* these policemen are a bunch of *pendejos,* and I am a quiet and respectable man." Then the officer arrested the man and seized him by the arm, the witness intervening at that moment when one of the defendant's companions sought to jump on the other officer; that the witness reached for his club in a forceful manner, saying: "Stand aside, those of you who are near the officer"; that the young men retreated and they arrested Alipio, taking him to jail, and that they also arrested his companions, but, as they behaved properly, they released them and kept the defendant under arrest; that all of the young men were singing and playing in a group; that they were in a gay mood; that the only one who

spoke in the manner stated was Alipio; that the others did not speak; that they were taken to jail for questioning and were then released; that it was when one of the young men jumped toward the officer that the witness took out his club for precaution, telling him to stand off, and that then they withdrew; that he cannot say to what the attitude of this young man was due; that no one showed a violent attitude of striking the officer. He was asked why, if they were quiet and no one attempted to attack the officer, he made use of his club, and he answered that he had also testified that they were violent and menacing and that at the moment of his intervention they were moving toward officer Fernández, and then he reached for his club, saying to them: "Stand aside, don't go near the officer"; that he had seen these young men on other occasions singing serenades, that they are all good boys, school boys mostly and good persons; that they interfered because there is an ordinance in Humacao prohibiting singing after midnight without permission from the mayor.

When the testimony of this witness was closed, the prosecuting attorney stated that the other officer was ill and that his testimony, should he appear to testify, would be cumulative evidence. The defendant offered no evidence. The basis of his defense is that the public element, indispensable, in his opinion, for the commission of the offense of breach of the peace, was not proved. In support of this theory he cites the cases of *People* v. *Vaz,* 28 P.R.R. 871; *People* v. *Ruiz,* 29 P.R.R. 68, and *People* v. *Ways,* 29 P.R.R. 311. In *People* v. *Ruiz, supra,* it was held that the averment in a complaint that the defendant employed menacing phrases or adopted an aggressive attitude is not sufficient, if it is not stated that said phrases or attitude actually had the effect of disturbing the peace of a certain person or persons, since such a disturbance is what constitutes the criminal offense. In the instant case it is alleged that the defendant used obscene phrases, spoken aloud, in an improper and obstreper-

ous manner and within the hearing of women and children, producing, by his disorderly and offensive conduct, a breach of the peace and quiet of the immediate neighborhood and especially of the complainants. Disregarding the facts for the present and referring exclusively to the complaint, there is no doubt that the same charges the defendant with the offense of breach of the peace.

In the case of *People* v. *Ruiz, supra,* it was held that the offense charged was not included in section 368 of the Penal Code. In *People* v. *Ways, supra,* this court, referring to the question of the public element which the defendant considers indispensable to the existence of the offense of breach of the peace, expressed itself as follows:

"It has been suggested that although the law penalizes a disturbance of the peace of an individual, yet the act must be done publicly in order to constitute the offense. We agree with this view. We have seen that section 368 of the Code forms part of its title which treats of crimes against the public peace. The nature of the different acts referred to in that section and its general spirit so demand. But that element is present in this case. The defendant's conduct towards the complainant was in public and it is expressly alleged in the complaint that the act of the defendant caused the gathering of many persons . . . ."

In the instant case, the evidence does not show that the defendant behaved in an obstreperous manner or that his words were spoken within the hearing of women and children. It was proved, however, that they were spoken in anger and in the presence of the very youths who were accompanying the defendant. Officer Encarnación tells us that when Alipio Rivera spoke those words, officer Fernández seized him by the arm and arrested him. The witness used his club at the moment when one of the young men jumped toward the officer. From his testimony it is deduced that there was a certain breach of the peace. The witness asserts that the young men were in a violent and menacing attitude when he used his club, although he states that no

one showed a violent intent to strike the officer. The words which appear to have been addressed by Alipio Rivera to the police are, in our opinion, vexing and offensive. He described the attitude of these officers of the law as abusive and used obscene words tending to mortify and wound them.

In accordance with section 368 of the Penal Code, the public peace may be disturbed by disorderly or offensive conduct. The complaint alleges that the defendant caused a breach of the peace by his disorderly and offensive conduct. The word "offensive" has been defined as something which serves or is used with the intention of offending, displeasing or mortifying. Funk & Wagnall's New Standard Dict. 1913. The said word is defined as that which injures or wounds the feelings or causes displeasure, invites provocation or provokes ire. This definition is taken from the case of *People* v. *Whitman,* 157 N.Y. Supp. 1107, where a woman was accused of having addressed vile epithets to another, under a statute which punishes the use of disorderly or offensive language. In the said case the court expressed itself as follows:

"It cannot be questioned but that the language addressed to the complainant's wife by the defendant was offensive within the meaning of the above definitions. In a broad sense such language would constitute a gross violation of the ordinary rules of propriety, good neighborhood, and good manners, and if spoken loud enough to be heard by the public must be considered as an offense against public order and decency. The use of such language at a time and place where it can be heard by other persons than the one addressed has a tendency to be injurious to the public by reason of the vile and obscene import of the words. Certain it is that, no matter how viewed, the use of such words must be offensive to the person attacked."

This court, in the case of *People* v. *Ways, supra,* said:

"Offensive. Anything that causes displeasure, gives pain or unpleasant sensations, is offensive." 29 Cyc. 1353.

As we have said, the obscene and offensive words were spoken in anger by the defendant in the presence of his

companions. The offense was offered publicly and, according to the evidence presented, produced a certain disturbance of the peace.

The judgment appealed from must be affirmed.